**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1589
_____

GLAVIN IVY,
                                        Appellant

v.

JOHN WETZEL; LAUREN BLAKE; J. WINTERS; DOMBROSKI;
HEX. FISCUS; CCPM GUSTAFSON; MAJOR PERRY; DSCS ADAMS;
DSFM MONGELLUZZO

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 1-20-cv-00265)
Magistrate Judge:  Honorable Richard A. Lanzillo

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 1, 2024

Before: SHWARTZ, RESTREPO, and FREEMAN, <u>Circuit Judges</u>

(Opinion filed August 2, 2024)
_____

OPINION[*]
_____

**PER CURIAM**

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se Appellant Glavin Ivy brought a complaint under 42 U.S.C. § 1983 presenting First Amendment claims related to the confiscation of a document in a prison library and a penal misconduct report that resulted from the incident. Ivy drafted a legal document on behalf of an inmate named Ricky Fritchman (herein "the Fritchman document"). Ivy printed this document using the prison library printer, at which point it was taken by Appellee J. Winters, a prison librarian who believed the document was Fritchman's property. Ivy attempted to take the document from the desk on which it was lying but Winters placed her hand on the papers and prevented him from doing so. Ivy and Winters spoke to each other, although the exact language used in this conversation is in debate, and the document was confiscated.

Winters filed a misconduct report that resulted in three charges: (1) "threatening an employee or their family with bodily harm"; (2) "using abusive, obscene, or inappropriate language to an employee"; and (3) possession of contraband, i.e., the document drafted by Ivy on behalf of Fritchman.[1] Ivy was found guilty of all three charges and sentenced to 75 days in a Restricted Housing Unit (R.H.U.).

In his complaint, Ivy argued that a document is not another inmate's personal property just because it has that inmate's name on it. In his view, he was not in possession of contraband because the document in question belonged to him, as he bought the paper on which it was printed, he typed it, Fritchman never had possession of

---

[1] Winters initially filed a misconduct report that only included the first two charges, but it was dismissed without prejudice after a hearing examiner determined that the report was "in error."

2

it, and it was not listed on Fritchman's property inventory sheet. Ivy further argued that even were this not so, he was never in possession of the document because it was confiscated by Winters before he took possession of it. In light of these facts, Ivy argued that, through the issuance of the misconduct charge, the Defendants violated his First Amendment rights by: (1) preventing him from engaging in inmate-to-inmate communication and (2) retaliating against him for expressing his intent to sue and for typing a document on behalf of another inmate.[2] Defendants Winters and Lauren Blake, another prison librarian, filed a motion for summary judgment, which the District Court granted.[3] Ivy timely filed this appeal, and then filed a motion for reconsideration, which the District Court denied.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment, applying the same standard as the District Court, and we may affirm on any basis supported by the record. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). "Summary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and . . . the moving party is entitled

---

[2] Ivy also presented claims of civil conspiracy, invasion of privacy, and violation of his Due Process rights, but the District Court dismissed these claims at the motion to dismiss stage, leaving the First Amendment claims as the only live issues. Ivy has not challenged the dismissal of these claims on appeal.

[3] At the motion to dismiss stage, the District Court dismissed claims against all Defendants except Winters and Blake.

3

to judgment as a matter of law." Ruehl v. Viacom, Inc., 500 F.3d 375, 380 n.6 (3d Cir. 2007) (internal quotation and citation omitted).

We begin with Ivy's claim that Winters' confiscation of the Fritchman document violated his First Amendment right to free speech (hereafter, "the contraband claim").[4] The Supreme Court has "determined that incarceration does not divest prisoners of all constitutional protections. Inmates retain . . . certain protections of the First Amendment." Shaw v. Murphy, 532 U.S. 223, 228–29 (2001). Having established this baseline, the Supreme Court "decline[d] to cloak the provision of legal assistance with any First Amendment protection above and beyond the protection normally accorded prisoners' speech. Instead, the proper constitutional test is the one [the Supreme Court] set forth in Turner." Id. at 231–32. "Of course, the Turner analysis is appropriate only in cases where a prison policy is impinging on inmates' constitutional rights," and it therefore "assumes as a predicate that the plaintiff inmate has demonstrated that a constitutionally protected interest is at stake." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000).

Once an inmate has demonstrated that a prison policy implicates a constitutionally protected interest, courts assess whether the policy is valid—that is, whether it is "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). To do so, courts address several factors set forth in Turner. Id. at 89–90.

---

[4] The District Court granted summary judgment in favor of Blake after Ivy conceded that "it would be proper" to do so. We concur with this decision.

Here, the District Court did not apply <u>Turner</u>'s multi-factor test because it concluded Ivy did not establish the predicate: that the prison's policy implicated a constitutionally protected interest. It noted that the only policy relevant here is the contraband policy—Section 3.C of DC-ADM 815, Personal Property, State Issued Items, and Commissary/Outside Purchases Manual—which states that "property belonging to another inmate" is considered contraband. It then rejected Ivy's arguments about the policy as "irrelevant to a free-speech claim." ECF No. 51 at 6 & n.3. It therefore granted summary judgment for Winters on the contraband claim.

In its opinion denying Ivy's motion for reconsideration, the District Court stated that "Ivy never demonstrated that the policy on its face or as applied to him burdened his free speech rights," and that "[g]iven this failure of proof, the Court had no occasion to undertake an analysis under <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987) beyond this threshold inquiry."

We disagree with the District Court's conclusion that the contraband policy, as applied here, did not implicate a constitutional interest. As the District Court correctly observed at an earlier stage of the case, "Ivy engaged in communicative activity when he prepared another inmate's habeas petition which at least implicates First Amendment interests." ECF No. 20 at 14. Thus, Ivy has established a predicate, and a <u>Turner</u> analysis must follow. Accordingly, we will vacate the District Court's order on the contraband claim and remand for further proceedings.

We next turn to Ivy's retaliation claim. To succeed on a prima facie claim for retaliation under the First Amendment, a prisoner-plaintiff must establish that (1) "the

5

conduct which led to the alleged retaliation was constitutionally protected"; (2) "he suffered some 'adverse action' at the hands of the prison officials" that "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"; and (3) there existed a "causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (internal citations omitted). If the plaintiff establishes these elements, the burden then shifts "to the defendant to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity." Id. This framework incorporates the Turner standard dictating "that a prison regulation that impinges on the constitutional rights of an inmate is valid if it is 'reasonably related to legitimate penological interests.'" Id. at 334.

As noted above, after receiving a misconduct report, Ivy was found guilty of three charges: "threatening an employee or their family with bodily harm"; "using abusive, obscene, or inappropriate language to an employee"; and possession of contraband. In her misconduct report statement, Winters wrote that Ivy swore at her, yelled at her, and reached across the counter to pull the Fritchman document out from under her hand. Winters stated that Ivy yelled at her, "You don't know who you are messing with. I'm not your average inmate!" and that she "found this comment to be threatening because he already reached across the counter to take something from [her] and he told [her] that he will 'fucking do what he wants.'"

In support of his misconduct hearing appeal, Ivy wrote that he "did not attempt to snatch the paper from the librarian's person, but from the table." He also wrote that "75

6

days for typing a document is outrageous and disproportionate. There was no threat of bodily harm whatsoever. Using 'fucking' as an adverb does not earn me 75 days in R.H.U." In his opening brief, he contends that this statement was a hypothetical, in that even if he had used profanity, 75 days in the R.H.U. would have been disproportionate to the offense. He also contends that he "did not threaten 'bodily harm,' but rather, that [his] alleged statements were in reference to his expression of intent to sue." He argues that he "strongly contested whether or not he used profanity," and points to his complaint, Responsive Statement of Material Facts, and Unsworn Declaration. He further argues that by being found guilty on the possession of contraband charge, he was being unlawfully disciplined for exercising his free speech rights.

Upon review, we conclude that Ivy failed to meet his burden with respect to his retaliation claim. In his complaint, Ivy argued that the Defendants sought to retaliate against him "for (1) expressing his intent to sue which constituted protected free speech, and (2) for assisting another inmate with seeking habeas relief by typing a document which also constituted free speech." Ivy alleged that Winters told him that "dumb inmates threaten to sue [her] all the time," and that she "threatened to not schedule [him] for additional time related to his appeal deadline as a form of retaliation." However, he fails to show that his alleged "constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." Watson v. Rozum, 834 F.3d 417, 422–23 (3d Cir. 2016). Instead, as discussed above, the record reflects that he was disciplined for violating the relevant prison policies, and that the Defendants would have made the same disciplinary decision regardless of Ivy's intent to sue or his assistance of

7

another inmate.  We therefore concur with the District Court's conclusion that summary judgment was warranted with respect to Ivy's retaliation claim.

Accordingly, for the reasons discussed above, we will vacate with respect to the contraband claim, affirm in all other respects, and remand for further proceedings.